IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76472-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| VLADIMIR PITSURENKO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 8, 2018 |

BECKER, J. — A jury convicted Vladimir Pitsurenko in 2016 of felony violation of a domestic violence court order. Notwithstanding the absence of evidence that an interpreter translated the provisions of the no-contact order, issued four years previously, into Pitsurenko's native language, the State presented sufficient evidence to prove that Pitsurenko was aware of the no-contact order and knowingly violated it. And because the law does not permit Pitsurenko to collaterally challenge a court order in a later proceeding in which he is charged with violating that order, the court properly denied his motion to exclude the no-contact order. We affirm.

Margarita and Vladimir Pitsurenko grew up together in Russia. When Pitsurenko was about 20 years old, he moved to the United States. His wife,

Margarita, followed a couple of years later.[1] The couple lived in Massachusetts for several years before they settled in Washington. They have three children together. The couple separated in late 2012 or early 2013.

In December 2012, the King County Superior Court issued a no-contact order prohibiting Pitsurenko from contacting Margarita for a period of five years. The order prohibited Pitsurenko from being within 1,000 feet of Margarita's residence or her person. The order permitted only third-party contact for the purpose of facilitating visitation with the children. Pitsurenko signed the order underneath the statement, "I acknowledge receipt of this order." At the end of the no-contact order, there is a section for an authorized interpreter to certify that he or she translated the provisions of the order into the defendant's native language. That portion of the order was left blank.

Four years later, around midnight on October 5, 2016, Margarita called the police after she heard someone yelling "like an animal" outside her bedroom window of the apartment she shared with the children. She immediately recognized Pitsurenko's voice. The screaming lasted for about 20 minutes and disturbed some of her neighbors. Margarita was afraid to look outside or open the door, but once she heard police officers arrive, she stepped onto her porch and saw Pitsurenko.

Donovan Heavener, a Federal Way police officer, arrived at Margarita's apartment in response to her call. He heard yelling, walked behind the apartment, and found Pitsurenko standing next to the back patio door. Officer

---

[1] We refer to Margarita Pitsurenko by her first name to avoid confusion.

Heavener spoke to Pitsurenko, who provided his Russian passport as identification. Pitsurenko appeared to be intoxicated. His eyes were glassy and bloodshot, and he smelled of alcohol. After a second officer arrived and spoke with Margarita, Officer Heavener arrested Pitsurenko.

At Pitsurenko's bifurcated trial for felony violation of a no-contact order, the State presented the testimony of Margarita and the two police officers who responded to her call. The defense did not call any witnesses.

There was no dispute that Pitsurenko received the no-contact order in 2012 and that his presence on Margarita's back patio on the night of October 5, 2016, violated the terms of the order. Pitsurenko argued that he could not speak English well enough to understand the terms of the no-contact order, pointing out that the State presented no evidence that the order was translated into Russian in 2012, or at any other time. And relying on evidence that Margarita unsuccessfully sought to rescind the no-contact order in 2015, Pitsurenko claimed he had reason to believe the order was no longer in effect.[2]

The State argued that the two-page order was not overly technical or complex and there was no evidence to indicate that Pitsurenko's understanding of English was insufficient to understand it. The State further argued that Pitsurenko's use of an interpreter during the trial was not evidence that his English ability was insufficient to understand the terms of the no-contact order without translation and pointed to evidence that Pitsurenko was able to communicate with the police officers in English at the time of his arrest.

---

[2] Apparently, Margarita failed to schedule a hearing on her motion to lift the order.

3

A jury found Pitsurenko guilty. The jury also found by special verdict that Pitsurenko and Margarita were members of the same family or household prior to or at the time of the crime. Following a second phase of the trial, the jury found that Pitsurenko had been convicted twice previously of violating the provisions of a court order. He now appeals.

## Sufficiency of the Evidence

Pitsurenko claims that because the State presented no evidence that an interpreter translated the order, or other evidence that he understood its specific terms, no reasonable trier of fact could find that he knowingly violated the no-contact order. Pitsurenko contends the only evidence before the jury demonstrated that he was a Russian speaker who was unable to understand "legal English" and he signed an order that was not translated into his native language. He points out that the jury could not infer knowledge from his two prior convictions for violating the 2012 order because the evidence of his convictions was not before the jury.

This court reviews claims of insufficient evidence to determine whether, "after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences from the evidence in favor of the State and against the defendant. Salinas, 119 Wn.2d at 201. In the sufficiency context, we consider circumstantial evidence as probative as direct evidence. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). We defer to the fact finder on issues of conflicting testimony, witness

credibility, and persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

To convict Pitsurenko of felony violation of a court order from October 5, 2016, to October 6, 2016, the State had to prove that a no-contact order applicable to Pitsurenko existed on those dates, that Pitsurenko knew the order existed and knowingly violated it, and that, in relevant part, he had twice been previously convicted for violating the provisions of a court order. See RCW 26.50.110(1). A person acts knowingly if "he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense." RCW 9A.08.010(1)(b)(i).

Contrary to Pitsurenko's argument, the jury was not required to infer that he could not have understood the terms of the 2012 no-contact order without translation. Both police officers communicated with Pitsurenko on the night of the incident in English. When Officer Heavener came upon Pitsurenko, they briefly conversed in English. They had further conversation while a second officer spoke with Margarita. Later, on the way to the jail, Officer Heavener and Pitsurenko discussed something else "not related to this case whatsoever." Officer Heavener acknowledged that when he recited the Miranda[3] warnings, Pitsurenko responded that he "didn't understand anything." But Pitsurenko's statement was vague and ambiguous, especially because before and after he claimed not to understand "anything," Pitsurenko communicated with the officers in English.

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Viewing the evidence and all reasonable inferences in the light most favorable to the State, as we are required to do, the evidence was sufficient for the jury to find that Pitsurenko knew of the existence of the order and knowingly violated it.

## Admission of No-Contact Order

Before trial, Pitsurenko sought to exclude the 2012 no-contact order he was charged with violating. He argued that because the provisions of the order were not translated into his native language, the order was invalid. The State objected because whether or not it was translated, the order had not expired and the trial court had the authority to impose it. After listening to an audio recording of the December 2012 sentencing hearing, during which the court issued the no-contact order as a part of a criminal judgment and sentence, the trial court denied the motion. The trial court also denied Pitsurenko's motion for reconsideration.

Pitsurenko assigns error to the court's ruling. He claims that because there was no evidence the order was translated, the State failed to prove he had specific notice of the prohibited conduct and the court should have excluded the order as "inapplicable."

The collateral bar rule prohibits a party from challenging the validity of a court order in a later proceeding for violation of that order. City of Seattle v. May, 171 Wn.2d 847, 852, 256 P.3d 1161 (2011). While exceptions exist for orders that are void or inapplicable, the court order at issue in this case is neither. May, 171 Wn.2d at 852, 854-55. An order is void "only if there is 'an absence of jurisdiction to issue the type of order, to address the subject matter, or to bind the

6

defendant.'" May, 171 Wn.2d at 852, quoting Mead Sch. Dist. No 354 v. Mead Educ. Ass'n, 85 Wn.2d 278, 284, 534 P.2d 561 (1975). And an order is "inapplicable" only if it does not apply to the defendant or to the charged conduct, or if the order cannot constitutionally be applied because, for instance, the face of the order fails to give the restrained party adequate notice of the prohibited conduct. May, 171 Wn.2d at 854.

The no-contact order was in effect in October 2016, and Pitsurenko was subject to the terms of the order. The terms of the order are not vague, nor is it otherwise inadequate on its face. Pitsurenko's argument regarding his right to translation of the provisions of the order does not implicate the limited exceptions to the collateral bar rule. May leaves no doubt that no-contact orders issued pursuant to chapter 10.99 RCW, as Pitsurenko's was, may not be collaterally attacked. May, 171 Wn.2d at 854-55; see also State v. Miller, 156 Wn.2d 23, 31 n.4, 123 P.3d 827 (2005) ("We do not suggest that orders may be collaterally attacked after the alleged violations of the orders. Such challenges should go to the issuing court, not some other judge.").

Affirmed.

_Bedcek, J._

WE CONCUR:

_Andrus, J._                    _Mann, ACJ_

7